IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JAMES CARL MOORE,

        Plaintiff,

v.                                      CIVIL ACTION NO.   2:14-cv-09913

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff James Carl Moore's Complaint seeking review of the final decision of the Commissioner of Social Security ("Commissioner"). (ECF 1.) By standing order entered February 7, 2014, and filed in this case on February 26, 2014, this action was referred to United States Magistrate Judge Cheryl A. Eifert for submission of proposed findings and recommendations for disposition (the "PF&R"). (ECF 3.) On February 4, 2015, Magistrate Judge Eifert entered her PF&R, which recommends that this Court deny Plaintiff's request for judgment on the pleadings, (ECF 9), grant the Commissioner's request for judgment on the pleadings, (ECF 10), affirm the Commissioner's decision, and dismiss this case. (ECF 12.) Plaintiff filed timely objections to the PF&R on March 5, 2015 (the "Objections").[1] (ECF 15.)

For the reasons that follow, the Court **OVERRULES** the Objections, (ECF 15), **ADOPTS** the PF&R, (ECF 12), to the extent it is consistent with this Memorandum Opinion and Order,

---

[1] On February 23, 2015, Plaintiff filed a Motion for Extension of Time to file objections, (ECF 13), which the Court granted by its Order dated February 24, 2015, (ECF 14).

1

**DENIES** Plaintiff's request for judgment on the pleadings, (ECF 9), **GRANTS** the Commissioner's request for judgment on the pleadings, (ECF 10), **AFFIRMS** the decision of the Commissioner, and **DISMISSES** this action.

## I. *Procedural Background*

The facts concerning this matter are fully set forth in the PF&R and need not be repeated here at length. In short, Plaintiff filed an application for disability insurance benefits and supplemental security income on April 6, 2011, alleging disability as of June 2, 2009, (ECF 6-1 at 22; ECF 6-6 at 8), due to (1) "[b]ack injury; L3 thru S1 are bulging;" (2) "[n]erve damage on right side of spine due to bulging discs;" (3) "[h]eadaches from back injury;" (4) "[l]eg and ankle problems; both legs," (ECF 6-1 at 86). The application was denied initially on August 1, 2011, (ECF 6 at 75–80), and upon reconsideration on September 16, 2011, (*id.* at 66–69).

A hearing was held before Administrative Law Judge Sabrina Tilley (the "ALJ") on January 18, 2013. (ECF 6-6 at 15–43.) On February 21, 2013, the ALJ issued an unfavorable decision.[2] (ECF 6 at 13–22.) The Appeals Council denied review of the ALJ's decision on December 16, 2013. (*Id.* at 5–7.) Thereafter, on February 13, 2014, Plaintiff filed the Complaint in this Court. (ECF 1.)

---

[2] The ALJ found at step one of the "sequential evaluation" process that Plaintiff "has not engaged in substantial gainful activity since June 2, 2009, the alleged onset date." (ECF 6 at 15.) At step two, the ALJ found that Plaintiff has one severe impairment—"residuals of a back injury with mild spinal stenosis." (*Id.* at 15–17.) The ALJ also found that Plaintiff had three "medically determinable impairments that were non-severe": headaches, neck pain/cervical sprain, and symptomatic tendonopathy of the left shoulder with degenerative changes. (*Id.* at 17.) At step three of the analysis, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*) The ALJ next found that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)," but reduced by certain exertion limitations. (*Id.* at 17–21.) The ALJ also found that Plaintiff "is unable to perform any past relevant work." (*Id.* at 21.) Finally, at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id.* at 21–22.)

## II. Standard of Review

### A. Review of the PF&R

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

### B. Review of the ALJ's Findings and Decision

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). Substantial evidence requires more than a scintilla, but less than a preponderance, of the evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "In reviewing for substantial evidence, [the court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a

claimant is disabled," the Court must defer to the Commissioner's decision. *Id.* (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

Plaintiff bears the burden of proving to the Commissioner that he is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5); *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993). "The term 'disability' means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step "sequential evaluation" process to evaluate a disability claim.[3] *See* 20 C.F.R. §§ 404.1520(a) & 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If a decision regarding disability can be made at any step of the process, however, the inquiry ceases. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

### III. Discussion

Plaintiff raises two objections to the Magistrate Judge's findings and recommendations in the PF&R. First, Plaintiff asserts that the Magistrate Judge erred in finding that substantial

---

[3] In *Hall v. Harris*, the Fourth Circuit provided the following description of the "sequential evaluation" analysis:

> Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job.

658 F.2d 260, 264–65 (4th Cir. 1981); *see also* 20 C.F.R. §§ 404.1520 & 416.920 (providing the "sequential evaluation" analysis).

4

evidence supports the ALJ's step-two determination that Plaintiff's headaches and neck pain were not severe. (ECF 15 at 2–5.) Second, Plaintiff argues that Magistrate Judge Eifert also erred in finding that the ALJ committed harmless error in determining there were gaps in Plaintiff's treatment during the credibility and residual functional capacity ("RFC") analyses. (*Id.* at 5–6.) For the reasons discussed below, the Court **OVERRULES** Plaintiff's objections to the PF&R.

A.  **Step-Two Analysis: the Severity of Plaintiff's Headache and Neck-Pain Impairments**

Plaintiff first argues that Magistrate Judge Eifert erred in finding that substantial evidence supports the ALJ's determination at step two of the analysis that Plaintiff's headache and neck-pain issues were non-severe impairments.[4] (*See id.* at 2–5.) At step two of the "sequential evaluation" process, the administrative law judge determines "the medical severity" of a claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a); *see* SSR 96-3P, 1996 WL 374181, at \*1 ("The evaluation of whether an impairment(s) is 'severe' . . . requires an assessment of the functionally limiting effects of an impairment(s) on an individual's ability to do basic work activities . . . ."). "[A]n impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3P, 1996 WL 374181, at \*1 (citation omitted).

---

[4] In his Brief in Support of Judgment on the Pleadings, Plaintiff also argued that the ALJ erred at step two of the analysis by determining that Plaintiff's tendonopathy of the left shoulder was a non-severe impairment. (*See* ECF 9 at 9–11.) The Magistrate Judge found that substantial evidence supports the ALJ's determination as to the tendonopathy. (ECF 12 at 33–35.) Plaintiff then abandoned this argument in the Objections. (*See* ECF 15 at 2–5 (only addressing the determinations as to Plaintiff's headaches and neck pain).) As such, this issue is not presently before the Court. *See Thomas*, 474 U.S. at 150 (stating that a district court is not required to review "a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings").

"Basic work activities . . . mean the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b) & 416.921(b). Examples of "[b]asic work activities" include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

*Id.* §§ 404.1521(b) & 416.921(b).

An impairment must also satisfy the duration requirement to qualify as "severe." *Id.* §§ 404.1509 & 416.909. The duration requirement provides that "[u]nless [a claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." *Id.* §§ 404.1509 & 416.909. In addition, if the impairment "can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (citing *Purdham v. Celebrezze*, 349 F.2d 828, 830 (4th Cir. 1965) and 20 C.F.R. § 404.1530).

A claimant bears the burden of establishing that an impairment meets the "severe" standard. *Heckler v. Campbell*, 461 U.S. 458, 460 (1983). To do so, a claimant must "furnish[] such medical and other evidence of the existence [of a disability] as the Commissioner of Social Security may require." 42 U.S.C. § 423(5)(A). "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . there must be medical signs and findings . . . ." *Id.*; *see also Craig v. Chater*, 76 F.3d 585, 592 (4th Cir. 1996) ("While the pain caused by an impairment, independent from any physical limitations imposed by that impairment,

6

may of course render an individual incapable of working, allegations of pain and other subjective symptoms, without more, are insufficient." (citation omitted)).

"[W]hen Congress codified the severity requirement in the regulations, it noted that a claimed 'physical or mental impairment must be of a nature and degree of severity to justify its consideration as the *cause of failure to obtain any substantial gainful work*.'" *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2008) (quoting S. Rep. No. 1987 (1954), *reprinted in* 1954 U.S.C.C.A.N. 3710, 3730); *see Bowen v. Yuckert*, 482 U.S. 137, 147 (1987) (noting that the House report "accompanying the 1954 Amendments" that included the severity requirement "contains virtually identical language" as the Senate report). As such, "[i]n determining whether a severe impairment exists, the Commissioner considers the 'effect' of the impairment." *Williamson*, 350 F.3d at 1100 (quoting 20 C.F.R. § 416.920(a)). The severity determination is ultimately "a threshold question with a de minimus . . . requirement." *Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (citing *Yuckert*, 482 U.S. at 153–54); *see Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." (citation omitted)).

In this case, the ALJ found that Plaintiff had "the following severe impairment: residuals of a back injury with mild spinal stenosis." (ECF 6 at 15.) However, the ALJ also found that Plaintiff's headaches and neck pain did not qualify as "severe" impairments "because they did not cause a significant limitation in the claimant's ability to perform basic work activities." (*Id.* at 17.) The ALR provided two rationales for this determination: (1) these "medically determinable impairments were acute ailments that did not affect him for at least 12 consecutive months;" and (2) "all of these conditions resolved promptly with either no treatment or after brief treatments

7

including medication, hospitalizations, x-rays, and over-the-counter remedies."[5] (*Id.*) Plaintiff argues that substantial evidence does not support these determinations. (ECF 15 at 2–5.) The Court disagrees and finds that substantial evidence supports the ALJ's severity determinations as to Plaintiff's headaches and neck pain.

Regarding Plaintiff's headaches, the ALJ provided the following relevant discussion in her decision:

> In terms of the claimant's alleged headaches, on the Personal Pain Questionnaire dated May 31, 2011, the claimant indicated he has headaches three to four times a week that last 12 to 24 hours. He receives some relief with Ibuprofen without side effects (Section E, pages 28 to 32). On July 6, 2011, the claimant reported to Dr. Bhirud that he started having headaches after the June 2009 motor vehicle accident. He has not been able to see any physician for headaches due to lack of medical insurance; he has sought treatment at the emergency room (Section F, page 73). At the hearing, the claimant testified he has headaches two times a week; he takes Advil, uses an ice pack, and lies down. A CT of the head dated June 15, 2009, indicates no acute intracranial abnormalities (Section F, page 129). The medical evidence indicates the claimant has sought treatment for headaches in

---

[5] In the Objections, Plaintiff provides the following argument:

> In order to find that the ALJ's findings were supported by substantial evidence, . . . the Magistrate Judge supplied *post hoc* rationale that the ALJ herself did not articulate. The Magistrate Judge parsed the record to find medical evidence that seemingly supported the ALJ's conclusory statement that the headaches and the neck pain did not meet the Commissioner's durational requirement and or were insignificant impairments.

(ECF 15 at 3 (citation omitted).) Plaintiff fails to cite to any case law supporting this argument. (*See id.*)
   In the context of reviewing agency actions, "courts may not accept appellate counsel's post hoc rationalizations for agency action; . . . an agency's discretionary order [may] be upheld, if at all, on the same basis articulated in the order by the agency itself." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962); *see also id.* at 169 ("[A] simple but fundamental rule of administrative law . . . is . . . that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action.") (internal quotation marks and citation omitted). "While [a court] may not supply a reasoned basis for the agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned." *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974) (citations omitted).
   Insofar as this principle of judicial review of agency action is implicated in the present case, plaintiff's "*post hoc*" argument clearly misapprehends the Magistrate Judge's analysis in the PF&R. The PF&R provides the ALJ's rationales in finding Plaintiff's headaches and neck pain were not "severe," then addresses those rationales in the discussion regarding both impairments. (*See* ECF 12 at 30–33.) This analysis does not raise any "*post hoc*" concerns and, as such, the Court **OVERRULES** Plaintiff's "*post hoc*" objection.

8

> February 2011, August 2011, January 2012, and August 2012. The records show cessation, improvement, or resolution of headache with medications (Section F, pages 289 to 291, 292 to 293, 298 to 299, and 316 to 319). The medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms.

(ECF 6 at 18–19.) As this passage illustrates, there is substantial evidence in the record indicating that Plaintiff did not report headache issues for twelve consecutive months—as needed to satisfy the duration requirement. *See id.* (noting that Plaintiff only reported headaches four times over a two-year period). *See generally* 20 C.F.R. §§ 404.1509 & 416.909 (providing the duration requirement). Additionally, this passage provides that substantial evidence supports a determination that Plaintiff's headaches can be reasonably controlled by medication or treatment and, as such, are not "severe" impairments. (*See* ECF 6 at 18–19.) *See generally Gross*, 785 F.2d at 1166 (stating that an impairment is not disabling if it "can be reasonably controlled by medication or treatment" (citation omitted)). Accordingly, the Court finds that substantial evidence supports the two rationales provided by the ALJ for finding that Plaintiff's headaches do not qualify as "severe" impairments.

As to the neck-pain impairment, the record includes substantial evidence supporting the ALJ's determination that Plaintiff did not consistently report neck-pain issues for the required twelve consecutive months. For example, Plaintiff stated in his May 31, 2011 Personal Pain Questionnaire that neck pain was an issue, (ECF 6-1 at 72), but he did not reference any neck pain in his April 2011 Disability Report, (*see id.* at 86). Additionally, Plaintiff complained of neck pain to medical professionals in June 2009, (*e.g.*, ECF 6-2 at 71; ECF 6-3 at 89), August 2009, (ECF 6-2 at 44), February 2011, (*id.* at 58–60), January 2012, (*id.* at 29–32), and August 2012, (*id.* at 49–51). However, Plaintiff sought the assistance of medical professionals on numerous additional

occasions during this time frame and failed to reference any neck-pain issues. (*See, e.g.*, *id.* at 52 (providing physician notes for Plaintiff's November 2, 2011 visit to the Charleston Area Medical Center Emergency Department ("CAMC"), which do not indicate Plaintiff suffered from any neck pain and, instead, state that Plaintiff "really denies any injury from the fall, specifically head injury, *neck injury* or other complaints") (emphasis added); *id.* at 56–57 (providing physician notes for Plaintiff's August 25, 2011 visit to CAMC and not indicating any neck-pain issues); ECF 6-4 at 71 (providing Dr. Bhirud's disability determination evaluation, which indicates Plaintiff did not reference neck-pain issues in his medical history); ECF 6-2 at 38, 40–43 (providing the notes of a medical professional at the Saint Francis Hospital Center for Pain Relief (the "Center") for several different visits throughout 2010, none of which reference any neck-pain issues); ECF 6-4 at 76–77 (providing an August 11, 2010 letter from Richard Bowman at the Center, in which he states the following regarding Plaintiff's neck: "As of the last time I saw him it was not symptomatic"); ECF 6-2 at 61–62 (providing physician notes for Plaintiff's November 3, 2009 visit to CAMC and not referencing any neck-pain issues); ECF 6-4 at 20 (providing progress notes for Plaintiff from his July 27, 2009 visit to the CAMC Physical Therapy & Sports Medicine Center, which note "neck improved").) Based on this inconsistent record of neck-pain issues, the Court finds that substantial evidence supports the ALJ's rationale that Plaintiff failed to show that his neck-pain impairment satisfies the twelve-month duration requirement. *See* 20 C.F.R. §§ 404.1509 & 416.909 (providing the duration requirement).[6]

---

[6] The Court finds, however, that the record does not provide substantial evidence supporting the ALJ's second rationale pertaining to the neck-pain impairment—that it "resolved promptly with either no treatment or after brief treatments including medication, hospitalizations, x-rays, and over-the-counter remedies." (ECF 6 at 17.) While the record includes statements by medical professionals indicating neck pain was not an ongoing issue, (*see, e.g.*, ECF 6-4 at 76–77 (providing an August 11, 2010 letter from Richard Bowman at the Center, in which he notes that Plaintiff's neck "was not symptomatic")), there is little evidence in the record that any changes to Plaintiff's neck-pain impairment were the result of treatments or hospitalization. Nonetheless, as discussed above, the Court does not

For the reasons discussed above, the Court finds that substantial evidence supports the ALJ's step-two findings that Plaintiff's headache and neck-pain impairments do not qualify as "severe."[7] Accordingly, the Court **OVERRULES** Plaintiff's objections to the ALJ's step-two analysis.

B.  **The ALJ's Error During the Credibility and RFC Analyses**

Magistrate Judge Eifert found that the ALJ erred in determining that "significant gaps in treatment" existed in 2009 and between 2011 and 2012 when assessing Plaintiff's credibility and identifying Plaintiff's RFC. (ECF 12 at 43–44.) However, the Magistrate Judge found that this error was harmless, as the ALJ considered all relevant evidence during those "gap" periods. (*Id.* at 44–48.) Plaintiff objects to this finding and argues the Court should remand this case due to the ALJ's faulty determination regarding these "gaps in treatment." (ECF 15 at 5–6.)

If an administrative law judge errs in a part of her decision, the court "should nonetheless affirm the ALJ's decision," so long as "the court finds the error to be 'harmless.'" *Held v. Colvin*, Civil Action No. 7:12–CV–00457, 2014 WL 556266, at *8 (W.D. Va. Feb. 12, 2014) (citation omitted); *cf. Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required."). An error is harmless if it "clearly had no bearing on the procedure used or the substance of the decision reached." *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248 (1964)). Stated another way, "[r]emand is not required where, despite [the] ALJ's error, [the] ALJ would have reached the same result notwithstanding his error." *Farnsworth v. Astrue*,

---

disturb the ALJ's severity determination as to neck pain because there is substantial evidence in the record that Plaintiff's neck-pain impairment did not satisfy the duration requirement.

[7] As the Court finds the ALJ's severity determinations as to the headache and neck-pain issues are supported by substantial evidence, it does not reach Plaintiff's argument that the Magistrate Judge erred in finding that these determinations would constitute no more than harmless error. (*See* ECF 15 at 4–5.)

604 F. Supp. 2d 828, 837 (N.D. W. Va. 2009) (Stamp, J.) (citing *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994)); *see also Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (noting that an administrative law judge's error is harmless if it "was inconsequential to the ultimate disability determination" (citations omitted)); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." (citing *Ill. v. Interstate Commerce Comm'n*, 722 F.2d 1341, 1349 (7th Cir. 1983)).

"[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted); *see also Camp v. Massanari*, 22 F. App'x 311, at *1 (4th Cir. 2001) (finding that an error by the administrative law judge was harmless when the plaintiff "made no showing of prejudice"). In *Shinseki*, the Supreme Court analogized "review of ordinary administrative proceedings to appellate review of civil cases" in the context of a harmless error determination and provided the following useful discussion:

> To say that the claimant has the "burden" of showing that an error was harmful is not to impose a complex system of "burden shifting" rules or a particularly onerous requirement. In ordinary civil appeals, for example, the appellant will point to rulings by the trial judge that the appellant claims are erroneous, say, a ruling excluding favorable evidence. Often the circumstances of the case will make clear to the appellate judge that the ruling, if erroneous, was harmful and nothing further need be said. But, if not, then the party seeking reversal normally must explain why the erroneous ruling caused harm. If, for example, the party seeking an affirmance makes a strong argument that the evidence on the point was overwhelming regardless, it normally makes sense to ask the party seeking reversal to provide an explanation, say, by marshaling the facts and evidence showing the contrary. The party seeking to reverse the result of a civil proceeding will likely be in a position at least as good as, and often better than, the opposing party to explain how he has been hurt by an error.

556 U.S. at 409. *See generally Garner v. Astrue*, 436 F. App'x 224, 226 n.* (2011) (citing *Shinseki* in a harmless error discussion in a social security disability case).

In the instant case, the Court finds that the ALJ's error was harmless. While the ALJ found that "significant gaps in treatment" existed in 2009 and between 2011 and 2012, (*see* ECF 6 at 19–20), the record reflects that she nonetheless considered Plaintiff's treatments during these supposed gap periods, (*see id.* at 14–17). As such, any error by the ALJ in finding treatment gaps did not result in her excluding any relevant evidence from the analyses.

In the Objections, Plaintiff does not contest the Magistrate Judge's determination that the ALJ considered all relevant treatments during the purported "gap" periods. (*See* ECF 15 at 5–6.) Similarly, Plaintiff does not cite any additional evidence the ALJ would have considered, but for her errant treatment-gap finding. (*See id.*) Rather, Plaintiff provides only a general objection that the ALJ's finding regarding treatment gaps was material and "[i]t cannot be said with certainty that the ALJ's error did not impact the procedure and the outcome of this case." (*Id.*) However, an ALJ's errant finding of treatment gaps, in and of itself, does not result in reversible error if the ALJ still considered all relevant treatment evidence. *See, e.g.*, *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011) ("Because the gap in medical treatment did not play a major role in the ALJ's decision, any error in considering that gap in treatment was harmless." (citation omitted)); *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010) ("Undisputedly the ALJ erred in finding that there were 'gaps' in [the claimant's] pursuit of treatment. That error does not necessarily mean the ALJ's credibility determination was patently wrong. Reading the ALJ's opinion as a whole, we cannot say that the ALJ's mistaken finding that [the claimant] temporarily avoided treatment undermines the credibility determination."); *cf. Ubiles v. Astrue*, No. 11–CV–

6340T(MAT), 2012 WL 2572772, at *10 (W.D.N.Y. July 2, 2012) (finding that the administrative law judge's determination that there were gaps in the claimant's treatment was not harmless error because this finding resulted in a decision based on a record with insufficient "evidence to make a fair determination"). Plaintiff does not provide any specific argument or cite any evidence indicating that—but for the error—the ALJ would have reached a different decision. (*See* ECF 15 at 5–6.) As such, Plaintiff fails to meet his burden to establish that the ALJ's errant treatment-gap finding was not harmless error. *See, e.g.*, *Farnsworth*, 604 F. Supp. 2d at 837.

Accordingly, the Court **OVERRULES** Plaintiff's objection to the PF&R finding that the ALJ's "significant gaps in treatment" determination was harmless error.

## *IV. Conclusion*

For the reasons discussed herein, the Court **OVERRULES** the Objections, (ECF 15), **ADOPTS** the PF&R, (ECF 12), to the extent it is consistent with this Memorandum Opinion and Order, **DENIES** Plaintiff's request for judgment on the pleadings, (ECF 9), **GRANTS** the Commissioner's request for judgment on the pleadings, (ECF 10), **AFFIRMS** the decision of the Commissioner, **DISMISSES** this case, and **DIRECTS** the Clerk to remove this action from the Court's docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: March 30, 2015

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE